UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHARLES CUNNY,                                      :

                 Petitioner,         :        **<u>MEMORANDUM DECISION</u>**

           - v -                      :        19-cv-07320 (DC)

E. BELL, Superintendent                            :

                         :

               Respondent.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:       CHARLES CUNNY
                        *Petitioner Pro Se*
                        DIN 14-A5258
                        Clinton Correctional Facility
                        P.O. Box 2001
                        1156 Route 374
                        Dannemora, NY 12929-2000

                        ERIC GONZALEZ, Esq.
                        District Attorney, Kings County
                        By:    Leonard Joblove, Esq.
                                Camille O'Hara Gillespie, Esq.
                                Assistant District Attorneys
                        350 Jay Street
                        Brooklyn, NY 11201
                              Attorney for Respondent

CHIN, Circuit Judge:

        On November 20, 2014, following a jury trial, petitioner Charles Cunny

was convicted in the Supreme Court of New York, Kings County (Del Giudice, *J.*), of

defendant guilty of first-degree attempted assault in violation of N.Y. Penal Law §§ 110.00 and 120.10(1).  On November 20, 2014, the court sentenced Cunny to fifteen years' imprisonment followed by five years of post-release supervision.  The Appellate Division, Second Department affirmed his convictions, *People v. Cunny*, 80 N.Y.S.3d 457 (2d Dep't 2018) ("*Cunny I*"), and the New York Court of Appeals denied his application for leave to appeal, *People v. Cunny*, 113 N.E.3d 952 (N.Y. 2018) (Fahey, *J.*) ("*Cunny II*").

On December 26, 2019, Cunny filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition") in this Court.  Dkt. 1.  Cunny raises four grounds in his Petition:  (1) the trial court's ruling under *People v. Sandoval*, 314 N.E.2d 413 (N.Y. 1974) ("*Sandoval*") deprived him of a fair trial; (2) there were errors in the grand jury proceedings; (3) the police refused to give him a lineup; and (4) trial counsel was ineffective for not timely filing a list of alibi witnesses.  *Id.* at 5-11.  The Suffolk County District Attorney's Office opposed the Petition on April 22, 2020.  Dkt. 5. On February 2, 2024, the case was reassigned to the undersigned.

For the reasons that follow, the Petition is DENIED.

2

## STATEMENT OF THE CASE

### I.    *The Facts*[1]

The evidence at trial established the following:

In 1989, Cunny was involved in a drug-selling scheme with Derryl Boyd;

they had grown up together and known each other for over twenty years.  Dkt. 6 at 54-

55.  As part of this scheme, Boyd sold drugs from a house in Coney Island and used a

firearm provided by Cunny for protection.  Dkt. 6 at 55.  At some point in 1989, police

officers came to the house to investigate reports of a "lady getting beat up in the house."

*Id.*; Dkt. 5 at 334.  When the police arrived, the owner of the house answered the door.

Dkt. 6 at 55.  Boyd "flushed the drugs," took the money that he had earned selling

drugs, and went to the house of an associate, Kevin, where Cunny was present.  *Id.*;

Dkt. 5 at 335.  Boyd told Cunny what had happened, and Cunny approached Boyd and

began swinging a broomstick at him.  Dkt. 5 at 336.  When Cunny swung the

broomstick at Boyd a third time, Boyd pulled out the firearm that defendant had given

him and shot Cunny five times "in the body" and neck.  *Id.*

Later that year, Cunny approached Boyd and told Boyd that he would not

retaliate against him for the shooting and that he would "squash the beef" with Boyd in

---

[1]        The facts are primarily drawn from Respondent's brief submitted in opposition to Cunny's direct
appeal in state court, which contains detailed citations to the trial record.  *See* Dkt. 6 at 50-62.

exchange for $2000 and Boyd's bike. *Id.* at 339. Boyd told Cunny that he did not have $2000 and that the bike did not belong to him. *Id.*

The following summer (the summer of 1990), Cunny came to the front of Boyd's building, pulled out a gun, put it to Boyd's head and other parts of Boyd's body, and threatened to kill Boyd. *Id.* at 338-39. He then shot Boyd in the leg. *Id.* at 339. Boyd did not report the shooting because Cunny had not pressed charges against Boyd for shooting him the year prior, and so Boyd felt it would be "unfair" to report Cunny. *Id.* at 339. For the next eight years, Cunny and Boyd had a "rocky relationship" because Cunny "was always trying to bully" Boyd. *Id.* at 32, 152.

On June 7, 2012, at about 10:15 a.m., at the corner of St. Johns Place and Classon Avenue in Brooklyn, Boyd was accompanying his then-fiancée, Lakisha Dixon-Boyd ("Dixon"), to a doctor's appointment. *Id.* at 341. As they walked near a construction site, Cunny ran up behind Boyd and hit him in the back of the head with a metal baseball bat. *Id.* at 343. Right after he hit Boyd, Cunny said "[T]hat's what you get from 20 something years ago[,] you stupid motherfucker." *Id.* Boyd recognized Cunny's voice because, at this point, the two had known one another for "many years," and they had even lived together. *Id.* at 351. After being struck, Boyd said, "Oh God, somebody help me. I know who hit me." *Id.* at 665.

Boyd fell to the ground face down, "crush[ing] down" on his left eye. Boyd's head was "split open," his "skin was off his face," and his face was "all full of

4

concrete on the ground." *Id.* at 344, 412, 437.  Boyd lost consciousness, but before he did,

hit the ground with a "loud noise." *Id.* at 344.  Dixon testified that at the time Cunny hit

Boyd, Cunny was wearing an orange-and-yellow construction hat, an orange-and-

yellow vest, blue jeans, and a white shirt. *Id.* at 410.  Immediately after the incident,

Dixon watched Cunny run down St. Johns Place toward Washington Avenue, into a

building on the corner. *Id.* at 411-12.

Emergency Medical Technician ("EMT") Tawana Chapman and Police

Officer Jose Camacho both responded to the scene, arriving within a few minutes of the

assault. Dkt. 6. at 57.  At the time they arrived, Boyd was lying prone in the street in a

pool of blood. *Id.*  Boyd, who had regained consciousness, told Officer Camacho and

EMT Chapman that he had been hit in the back of the head with a bat by Cunny, whose

voice he recognized and with whom he had had "a beef" twenty years before. *Id.*  Boyd

told Chapman that he was in pain and that his head was hurting. *Id.*  Dixon told Officer

Camacho that Cunny was wearing a yellow or orange construction vest, that she had

seen the bat that Cunny used to hit Boyd, and that Cunny had run into a building in the

middle of the block. *Id.* at 57-58.  Based on his conversation with Dixon, Officer

Camacho went to 500 St. Johns Place and recovered the bat and a construction vest in

front of the building. *Id.* at 58.

Boyd was taken to the hospital where he was treated by Doctor Samuel

Hawkins. *Id.*  Boyd had suffered multiple facial fractures, including orbital bone

fractures on both sides, a front bone fracture, and a fracture to the orbital bone

associated with pneumocephalus, the air around the brain. *Id.* Boyd also suffered a

laceration to his posterior scalp as well as damage to the nerves in the fingers of his left

hand. *Id.*

On June 8, 2012, Detective Jay Wolsky interviewed Boyd and Dixon at the

hospital. *Id.* Dixon told Detective Wolsky that she had never seen Cunny before, but

that she would be able to identify him if she saw him again. *Id.* at 58-59. Detective

Wolsky brought Dixon into the police precinct, and Dixon identified Cunny from a

photo array "right away." *Id.* at 59. On June 29, 2012, Cunny was arrested and placed in

a holding cell at the precinct. *Id.* When Detective Wolsky told Cunny that he was to be

placed in a lineup, Cunny "flipped the bench that was inside the cell area to its side."

Dkt. 5 at 528. Cunny yelled at Wolsky, saying, among other things, that if he were to be

put in a lineup, Cunny would "bloody" Wolsky, take "[his] fucking gun and shoot [him],

[and] punch [him] in [his] fucking face." *Id.* After discussing the matter with his

supervisor, Detective Wolsky elected not to conduct the lineup procedure. Dkt. 6 at 59.

On October 5, 2012, at approximately 4:00 p.m., after Boyd and Dixon left

a grocery store in the vicinity of Rockaway and Livonia Avenues in Brooklyn, a man

named Tray approached Boyd from behind and told Boyd that he knew him from

Coney Island. Dkt. 6 at 59-60. Tray told Boyd that Cunny wanted to speak with him,

and when Boyd turned around, Cunny, who was five feet away from Boyd, jumped out of a car. *Id.* at 60.

Cunny told Boyd "not to go to court" and to "drop the charges." *Id.* Cunny asked Boyd· to go to his lawyer and "write a notarized letter" saying that, on the day of the incident, Boyd had been feeling "dizzy" and that Cunny was not the person who hit Boyd with the baseball bat. *Id.* Cunny also offered Boyd money, gave Boyd a "construction card," and offered Boyd a job in construction in exchange for dropping the charges against him. *Id.* Boyd told Cunny that he did not want money and that he could not work because he was on disability. *Id.* Dixon told Boyd that he should not speak with Cunny because Boyd had an order of protection against Cunny. *Id.* Dixon called the police. *Id.*

On October 24, 2012, Detective William Warren picked up Cunny, who had been arrested for attempting to bribe Boyd and for criminal contempt, and took him to the 84th Precinct to be fingerprinted. *Id.* at 61. On the way to the precinct, Cunny stated: "[Y]ou're not going to put no murder charges on me. I don't do nonsense. . . . I know what this is about, this is about [a] beef between me and this guy, this guy about twenty years ago shoots me like five times[;] he shot me. when I was down." *Id.*; Dkt. 5 at 580. Cunny told Detective Warren that Boyd should have "[done] time" for murder but that instead, "I went after [Boyd] with a baseball bat." Dkt. 5 at 580. Cunny

told Warren that his dispute with Boyd "should have been handled in the street" but that instead Boyd was "trying to put paper" on him.  *Id.* at 581.

## II.     *The State Court Proceedings*

### a.     *The Indictment and Pre-Trial Proceedings*

For the acts that occurred in June 2012, Cunny was charged by Kings County Indictment Number 5569/2012 (the "June Indictment") with first-degree attempted assault, second-degree attempted assault, third-degree assault, and fourth-degree criminal possession of a weapon.  Dkt. 5 at 2.

For the acts that occurred in October 2012, Cunny was charged under Kings County Indictment Number 9001/2012 (the "October Indictment") with bribing a witness, third-degree tampering with a witness, two counts of fourth-degree tampering with a witness, and second-degree criminal contempt.  *Id.*

On October 25, 2012, the trial court (Walsh, *J.*) dismissed the June Indictment because the People failed to conduct a proper inquiry regarding concerns raised by a grand juror who had heard other grand jurors make allegedly racist and sexist remarks and because the People had failed to bring the matter before the supervising judge.  *Id.*

In November 2012, the allegations raised in both the June and October Indictments were re-presented to the grand jury under Kings County Indictment Number 9785/2012 (the "November Indictment").  *Id.* at 3.  Cunny was charged with

8

first-degree attempted assault, second-degree assault, third-degree assault, and fourth-degree criminal possession of a weapon in connection with the June incident, and bribing a witness, two counts of fourth-degree tampering with a witness, and second-degree criminal contempt in connection with the October incident. *Id.*

On October 24, 2013, the trial court (Mangano, J.) held a hearing regarding Cunny's motion to suppress Dixon's anticipated in-court identification of Cunny and certain incriminating statements made by Cunny. *Id.* at 35-121. The court issued a ruling from the bench denying Cunny's motion to suppress in all respects. *Id.* at 118.

  **b.**  ***The Trial***

Trial began on September 15, 2014. *Id.* at 134. Before *voir dire* began, the court (Del Giudice, J.) made a *Sandoval* ruling allowing the People could cross-examine Cunny, if he were to testify at trial, about the underlying facts of a 2006 conviction for attempted coercion during which defendant threatened a construction manager with a hammer. *Id.* at 137-162; *Sandoval*, 314 N.E.2d at 413. The jury heard testimony from the People's witnesses Boyd and Dixon, who both identified Cunny as the assailant in court. *Id.* at 327-400, 402-53. EMT Chapman, Officer Camacho, Doctor Hawkins, and Detectives Wolsky and Warren all testified about their interactions with Cunny and Boyd after the incident. *See generally* Dkt. 5. Cunny did not testify and the defense did not present any witnesses. *Id.* at 646. The court submitted to the jury counts of first-degree attempted assault, second-degree assault, and bribing a witness, and instructed

9

the jurors not to consider the second-degree assault count if they found Cunny guilty of the attempted first-degree assault count. *Id.* at 714-47.

On September 19, 2014, the jury returned a verdict finding Cunny guilty of first-degree attempted assault and acquitting Cunny of the witness bribery count. *Id.* at 758-60.

On November 20, 2014, the court, having adjudicated Cunny a second felony offender, sentenced Cunny to a prison term of fifteen years, to be followed by five years of post-release supervision. *Id.* at 781-94.

### c. *Direct Appeal*

Cunny appealed his convictions and sentence to the Appellate Division, Second Department, asserting the following claims: (1) the trial court's *Sandoval* ruling deprived him of his right to a fair trial, to testify, and to present a defense; (2) he was deprived of due process by the admission of his non-probative but prejudicial statement that he would "shoot" or "bloody" the police officer which led the police not to conduct a lineup procedure; (3) his counsel was ineffective for not filing an alibi notice as required by statute and deprived Cunny of the opportunity to present this defense to the jury; and (4) his sentence should be reduced in the interest of justice. *Id.* at 4-5.

On July 11, 2018, the Appellate Division affirmed Cunny's convictions. *See Cunny I*, 80 N.Y.S.3d at 457. The Appellate Division held that (1) the trial court's *Sandoval* ruling was erroneous, but the error was harmless, *id.* at 460; (2) Cunny's

statements in the holding cell were properly admitted to explain why the police did not conduct a lineup and as evidence of defendant's consciousness of guilt, *id.* at 460-61; (3) the record did not show that Cunny's trial counsel was ineffective and that because Cunny's claim of ineffective counsel could not be resolved without reference to matter outside the record, the claim should be raised in a motion pursuant to New York Criminal Procedure Law ("CPL") § 440.10, *id.* at 461; and (4) Cunny's sentence was not excessive, *id.*

On September 29, 2020, the New York Court of Appeals (Fahey, J.) denied leave to appeal. *Cunny II*, 113 N.E.3d at 952.

### d.  *State Collateral Review*

On October 1, 2019, Cunny moved to vacate the judgment of conviction pursuant to CPL § 440.10.  Dkt. 5 at 6.  Cunny claimed that: (1) the People violated CPL § 190.75(3) by failing to obtain permission from the court to resubmit to the grand jury the charges dismissed under the June Indictment; (2) Cunny's trial counsel was ineffective for failing to challenge the People's failure to seek authorization to re-submit the charges to the grand jury without a showing of good cause and to re-present the charges within the required time limit of thirty days; (3) counsel did not inform Cunny that the People planned to re-present the case to the grand jury, and Cunny was unable to testify at the re-presentation; (4) the People exceeded the thirty days available for resubmission of the case to the grand jury; and (5) the People improperly joined the

11

charges originally presented under the June Indictment with the charges in the October

Indictment in the November Indictment.  *Id.*

On January 29, 2020, the People opposed Cunny's § 440.10 motion.  *Id.*  On

January 14, 2021, the Kings County Supreme Court (Del Giudice, *J.*) denied Cunny's

amended § 440.10 motion in all respects.  Dkt. 12.  The court held that with the

exception of Cunny's ineffective assistance claim, his claims were procedurally barred

and meritless in any event.  *Id.* at 4.  The court rejected Cunny's ineffective assistance

claim on the merits, finding that the "argument that trial counsel's failure to object to the

re-presentation of charges without leave of the court would have been frivolous."  *Id.* at

7.

On March 9, 2021, Cunny sought leave to appeal the trial court's § 440.10

decision to the Appellate Division.  *See* Dkt. 14 at 1.  On April 23, 2021, the People

opposed Cunny's application for leave to appeal.  *Id.*  By order dated May 3, 2021, the

Appellate Division (Dillon, *J.*) denied the application.  *People v. Cunny*, 2021 WL

1729840, No. 2021-02567 (2d Dep't May 3, 2021).[2]

---

[2] The claims in Cunny's § 440.10 motion are therefore exhausted, because a § 440.10 petitioner may not seek relief in the Court of Appeals if the Appellate Division has denied leave to appeal under C.P.L. § 450.15(1).  *See Safran v. New York*, No. 1:22-CV-3177 (NRM), 2023 WL 3306932, at *2 (E.D.N.Y. May 6, 2023) ("Because a denial by the Appellate Division for leave to appeal a trial court's denial of an applicant's § 440 motion 'is not reviewable by the New York Court of Appeals,' the claims raised in a such a motion are considered exhausted.").

### III.   *Proceedings in this Court*

On December 26, 2019, proceeding *pro se*, Cunny filed the Petition asserting that: (1) the trial court's *Sandoval* ruling deprived him of a fair trial; (2) there were errors in the grand jury proceedings; (3) the police refused to give him a lineup; and (4) trial counsel was ineffective for not timely filing a list of alibi witnesses.  Dkt. 1.  On April 22, 2020, the District Attorney's Office filed its opposition to the Petition.  Dkt. 5-6.  On August 31, 2020, Cunny moved for a stay and abeyance so that he could file a new § 440.10 motion to exhaust his claim of ineffective assistance of counsel based on his trial counsel's alleged failure to timely give alibi notice.  Dkt. 7.  On September 2, 2022, Respondent filed its reply.  Dkt. 9.  On October 2, 2020, this Court (Donnelly, *J.*) granted Cunny's motion for a stay and abeyance.  Docket Entry of October 2, 2020.

On July 21, 2021, this Court (Gujarati, *J.*) ordered Cunny to file a letter informing the Court whether he still intended to file a new § 440.10 motion.  Docket Entry of July 21, 2021.  On August 19, 2021, Cunny filed a letter with the Court noting that he would not be filing a § 440.10 motion on the alibi notice claim, and "no longer seek[s] review by this Court" on the claim.  Dkt. 17.  The case was reassigned to the undersigned on February 2, 2024.

## DISCUSSION

I.   *Federal Review of State Convictions*

A federal court may not grant a habeas petition on a claim that was

adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857

F.3d 466, 477 (2d Cir. 2017).  Hence, when a claim is adjudicated on the merits, the state

court's decision must be accorded "substantial deference."  *Fischer v. Smith*, 780 F.3d 556,

560 (2d Cir. 2015) (citing *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009)).  "A federal

court may reverse a state court ruling only where it was 'so lacking in justification that

there was . . . [no] possibility for fairminded disagreement.'"  *Vega v. Walsh*, 669 F.3d 123,

126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v.

Lambert*, 565 U.S. 520, 524 (2012) (per curiam) (quoting *Harrington*, 562 U.S. at 102).

A federal court cannot review a habeas petition unless the petitioner "has

exhausted the remedies available" in state courts.  28 U.S.C. § 2254(b)(1)(A).  This

requirement affords state courts the "opportunity to pass upon and correct alleged

violations of its prisoners' federal rights."  *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir.

14

2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). "This requires that the prisoner 'fairly present' his constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'" *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).

Moreover, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). In other words, if the state court refused to consider an argument because it was procedurally barred under state law, the argument is barred from federal habeas review so long as the procedural bar is "adequate to support the judgment." *Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007) (quoting *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006)). A petitioner's failure to comply with a state procedural rule qualifies as such an adequate and independent state ground, provided that (i) the state court actually "relied on the procedural bar as an independent basis for its disposition of the case," *Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (internal quotation marks and citation omitted), and (ii) the state procedural rule is "firmly established and regularly followed," *James v. Kentucky*, 466 U.S. 341, 348 (1984).

The Second Circuit has "held repeatedly that the contemporaneous objection rule" -- that state appellate courts will review only those errors of law that are presented contemporaneously such that the trial court is "reasonably prompted" to correct them -- "is a firmly established and regularly followed New York procedural rule." *Downs v. Lape*, 657 F.3d 97, 103-04 (2d Cir. 2011) (citations omitted). Hence, the Circuit has affirmed the denial of habeas relief based on the Appellate Division's ruling that the failure of a petitioner to object at trial rendered a claim unpreserved for appellate review. *See, e.g., Garcia v. Lewis*, 188 F.3d 71, 81-82 (2d Cir. 1999) (affirming denial of habeas relief where petitioner's trial counsel failed to bring to trial court's attention a claim that he later attempted to advance on appeal). If a claim is procedurally barred pursuant to an independent and adequate state rule, a federal habeas court may not review it on the merits, unless the petitioner demonstrates (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750.

## II.    *Analysis*

I address the remaining claims of the Petition:  (1) the trial court's *Sandoval* ruling deprived Cunny of a fair trial; (2) there were errors in the grand jury proceedings; and (3) the police refused to give Cunny a lineup.

### A.    The *Sandoval* *Ruling*

First, Cunny argues that the state court deprived him of a fair trial when it made a *Sandoval* ruling allowing the People to cross-examine him, if he were to testify at trial, about the underlying facts of a 2006 conviction for attempted coercion during which Cunny threatened a construction manager with a hammer.  Dkt. 1 at 5.  The Appellate Division considered the claim on direct appeal and concluded that the court should not have allowed the facts of Cunny's 2006 conviction to be used to cross-examine defendant if he were to testify at trial, but that any error in the court's *Sandoval* ruling was harmless.  *See Cunny I*, 80 N.Y.S.3d at 457.  This determination is entitled to "substantial deference," *Fischer*, 780 F.3d at 560, and will not be overturned by a federal court conducting habeas review unless the petitioner can establish that the state court's conclusion was "unreasonable," *see* 28 U.S.C. § 2254(d).

As a threshold matter, this claim is not cognizable on habeas review because it is not grounded in federal law.  *See Nieves-Delgado v. New York,* No. 00 CIV.1397 LTS, 2003 WL 21310815, at *2 (S.D.N.Y. June 9, 2003) ("The issue addressed directly by the *Sandoval* ruling was evidentiary in nature, and state court rulings on evidentiary matters, even when erroneous, generally do not reach constitutional magnitude.").  Moreover, the "Second Circuit [] has created a bright-line rule. . . . barring habeas relief for allegedly erroneous *Sandoval* rulings in instances where a defendant elects not testify."  *Id.*

17

In any event, the Appellate Division reasonably concluded that this argument fails on the merits, and thus, even if this error was of a constitutional magnitude, habeas relief would not be warranted.  Error of a constitutional magnitude is harmless is "there is no reasonable possibility that the error might have contributed to defendant's conviction." *People v. Crimmins,* 326 N.E.2d 787 (N.Y. 1975).  Cunny argues that the *Sandoval* ruling discouraged him from testifying at trial, but regardless of whether Cunny testified, the outcome at trial would have remained the same.  The evidence here established, among other things, that Boyd knew Cunny for over twenty years, recognized his voice at the time of the attack, provided his name to the police, and identified Cunny in court at trial.  Dixon also saw Cunny at the time of the crime, identified Cunny from a photo array prior to trial, and identified Cunny in court at trial.  And Cunny admitted to Detective Warren that "I went after him with a baseball bat." Dkt. 5 at 580.  Accordingly, Cunny's first claim fails.

### B.    *The Grand Jury Proceedings*

Nor is Cunny entitled to habeas relief on his claims concerning the grand jury proceedings.  Cunny claims that the grand jury voted not to indict him on attempted assault, the prosecutor committed misconduct by placing a forged count of attempted first-degree assault on the indictment, resubmitted the case to another grand jury without good cause or permission of the judge, and improperly joined another case in the grand jury presentation.  The Kings County Supreme Court (Del Giudice, *J.*)

18

considered these claims in denying Cunny's amended § 440.10 motion and concluded

that they were procedurally barred pursuant to CPL § 440.10(2)(c) because Cunny failed

to raise them on direct appeal.  The court further noted that Cunny's contentions with

respect to the grand jury proceedings were without merit.

Habeas relief is thus not available to Cunny for his claims regarding errors

in the grand jury proceedings.  For an independent and adequate state ground to bar

habeas relief, the state court rendering the judgment must "clearly and expressly state

that its judgment rests upon a state procedural bar." *Whitley v. Ercole*, 642 F.3d 278, 286

(2d Cir. 2011) (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996)).  Here, the Kings

County Supreme Court clearly and expressly stated that Cunny's grand jury claims

were procedurally barred.

Moreover, Cunny has failed to demonstrate that he is entitled to an

exception to the procedural default rule, because he has not shown either (1) cause and

actual prejudice or (2) that a fundamental miscarriage of justice would occur if the

merits of the federal claim were not considered.  *See Edwards v. Carpenter*, 529 U.S. 446,

451 (2000) (citations omitted); *Coleman*, 501 U.S. at 748; *Carvajal v. Artus*, 633 F.3d 95, 104

(2d Cir. 2011).

Even if these claims were not procedurally barred, they fail on the merits.

Cunny has not demonstrated that the trial court's adjudication violated his

constitutional rights.  "Claims of deficiencies in state grand jury proceedings are not

cognizable in a habeas corpus proceeding in federal court." *Davis v. Mantello,* 42 F.

App'x 488, 490-91 (2d Cir. 2002); *see Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir. 1989) (relying

on *United States v. Mechanik,* 475 U.S. 66 (1986)).  Therefore, Cunny is not entitled to

habeas relief on these grounds.

     C.    *The Lineup*

     Finally, Cunny argues that his federal constitutional rights were violated

because the police refused to conduct a lineup.  But Cunny did not raise this claim on

direct appeal, and, accordingly, it is unexhausted and not ripe for habeas review.  *See*

*Coleman,* 501 U.S. at 731.

     Because Cunny has no further avenue to pursue these constitutional

claims in state court, they are also procedurally defaulted and barred.  *See Reyes v.*

*Keane,* 118 F.3d 136, 140 (2d Cir. 1997) ("[A] claim is procedurally defaulted for the

purposes of federal habeas review where 'the petitioner failed to exhaust state remedies

*and the court to which the petitioner would be required to present his claims in order to meet the*

*exhaustion requirement would now find the claims procedurally barred.'")* (citation omitted).

Cunny has not demonstrated cause or prejudice to overcome this procedural bar.

     This claim fails on the merits in any event.  Under New York law, if a

defendant commits misconduct so as to "thwart" a lineup procedure, the People have a

right to introduce evidence of the victim's identification of defendant from pictures of

defendant in lieu of the aborted lineup.  *People v. Perkins,* 932 N.E.2d 879 (N.Y. 2010).

Detective Wolsky planned to have Cunny participate in a lineup, but Cunny threatened Wolsky with violence, which caused Wolsky to call off the lineup.  The People were therefore allowed to introduce evidence that Dixon identified Cunny by photograph.  In light of the trial record, Cunny's claims are plainly without merit and must be rejected.

## CONCLUSION

Cunny has failed to show any basis for relief under 28 U.S.C. § 2254.  Accordingly, the Petition is denied.  Additionally, I decline to issue a certificate of appealability because Cunny has not made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(2).  Pursuant to 28 U.S.C. § 1915(a)(3), I certify that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of Court is respectfully directed to mail a copy of this memorandum decision and the judgment to Cunny at his last address of record.

SO ORDERED.

Dated:     New York, New York
           March 4, 2024

DENNY CHIN
United States Circuit Judge
Sitting By Designation